UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60256-JEM(s)(s)

UNITED STATES OF AMERICA,

vs.

JOSEPH ISIAH WOODSON,

            Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

Pursuant to Title 18, United States Code, Section 3553(a), the United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Sentencing Memorandum and in support states as follows:

**LEGAL ARGUMENT**

It is well-settled that a district court must consult the Sentencing Guidelines Manual and consider the advisory sentencing guidelines range for an offense of conviction prior to rendering a sentence. *United States v. Crawford,* 407 F.3d 1174, 1178-79 (11th Cir. 2005).  To properly calculate the sentencing guidelines range, the court must also consider departures – upwards or downwards – that may be warranted. *United States v. Jordi*, 418 F.3d 1212, 1215 (11th Cir. 2005) ("the application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered."); U.S.S.G. § 1B1.1(b).  After properly calculating the sentencing guidelines range, a district court must next consider and balance the sentencing factors in 18 U.S.C. § 3553(a) to determine a "reasonable" sentence,  which may be more or less severe than that provided for by the guidelines range. *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). The court need not discuss each of the 3553(a) factors in rendering a sentence, *United States v.*

1

*Scott,* 426 F.3d 1324, 1329 (11th Cir. 2005), so long as the record reflects consideration of the factors in general, *Nelson v. United States*, 555 U.S. 350 (2009).

Here, imposing a sentence within the advisory sentencing guideline range, is appropriate under 18 U.S.C. § 3553(a). The government submits that a sentence at the high end of the guideline is an entirely fair, just and reasonable sentence given the nature and circumstances surrounding the offenses of conviction and consideration of other § 3553 factors.

**The Nature and Circumstances of the Offense Conduct Warrants a Sentence Within the Advisory Guidelines Sentence Range.**

The first factor for the Court's consideration is the "nature and circumstances of the offense and the history and characteristics of the defendant." Both factors weigh strongly in favor of imposing a guideline sentence at the high end of the guideline range. The severity and extent of the Defendant's criminal conduct in this case cannot be overstated. To date, the FBI has identified well-over 350 child victims who were sexually abused by the Defendant.[1] The evidence at trial proved that for years, the Defendant was unrelenting in his sexual abuse of children via the internet. Up until the very day law enforcement arrested the Defendant, he was trolling social media, specifically Snapchat, looking for children he could exploit and take advantage of. In fact, the defendant testified that on the very day he was arrested, he reached out to one of the victims in an attempt to further sexually extort and exploit her because he knew his arrest was imminent. Using a mixture of deception and intimidation, the defendant coerced and extorted these children into sending depraved, sexually explicit, vile and demeaning sexually explicit images and videos of themselves to him. When the girls expressed reticence in sending additional sexually explicit

---

[1] The evidence presented at trial supported that the Defendant's crimes did constitute sexual abuse of minors. This was not a case of "mere" possession of child pornography, as if there can be such a thing; this was a case of production of child pornography through the use of interstate threats and extortion and, as such, absolutely constitutes sexual abuse.

2

photographs or videos, the Defendant further extorted them by threatening to post- and indeed posting- the previously provided material on Instagram and other social media sites. After receiving the sexually explicit images and videos, the Defendant used the internet to distribute the images to other pedophiles and saved them on his cell phone and in a Drop Box account which he systematically categorized and organized. Most damagingly, the Defendant did, in fact, distribute pornographic images and videos of these minor children on their social media accounts causing exposure to their entire contact list, which oftentimes consisted of numerous classmates. The Defednant had an extensive collection of child pornography. Law enforcement recovered thousands of images and videos between the Defendant's DropBox, Instagram and Samsung cell phone. The Defendant's DropBox account alone had nearly 3,500 images and videos of child pornography.  The extent of his criminal conduct, and the sheer number of victims he sexually abused, is staggering.

Likewise, the "history and characteristics of the defendant," also militates strongly in favor of imposing a sentence at the upper end of the guideline range. Significantly, the Defendant's trial testimony is important to consider.  The Defendant testified that he only committed these crimes because he was under duress; a claim the jury clearly rejected. He further testified that he had no choice but to extort and sexually exploit these children and did so based solely upon a (non-existent) threat. The Defendant testified that he himself was a victim. To date, the Defendant has not meaningfully accepted responsibility for any of his child pornography crimes, he seems to exhibit no remorse, and has not adequately apologized to the victims or families of the victims, save for one brief and isolated moment during the beginning of his direct testimony where he testified he never meant to hurt the victims and was "sorry for causing misery."  The Defendant told the jury that he was an avid "gamer" and spent most of his time on the computer in his room. He testified he was in fear of being "swatted" and that was the reason he "played along and

pretended" with the co-conspirator.  Interestingly, the Defendant told the jury that it took him a year to get "good at it."  It became clear during the trial that the systematic extortion of children was viewed as a game by the Defendant.  While the Defendant testified that what he was doing was disgusting, the texts between him and the co-conspirators show otherwise.  As proven at trial, the Defendant engaged in such a pervasive and relentless scheme to extort children, he could no longer recall which social media platform he used.  For example, the Defendant testified that he could not remember using Instagram in order to facilitate his scheme to extort child pornography when the Government's evidence consisting of the contents of the Defendant's Instagram account showed thousands of child pornography images,[2]  The Defendant's phone also evidenced he had a collection of known child pornography that he accumulated by his own accord and not because he was being "forced." [3]  The Defendant's testimony was a willful attempt to thwart justice. The Court can and should consider this in fashioning an appropriate sentence in this case.  *See, e.g., U.S. v. Mateos*, 623 F.3d 1350, 1366-67 (11th Cir. 2010) (holding that "[i]t was reasonable for the district court to consider defendant's perjurious trial testimony and lack of remorse.")

**The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, afford Adequate Deterrence to Criminal Conduct, and Protect the Public from Further Crimes of the Defendant.**

The next factor for the Court's consideration is the "need for the sentence imposed …to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A). This is the "'just deserts' concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." *United States v. Irey*, 612 F.3d at 1160, 1206 (internal quotation marks

---

[2] Governments Ex of the Defendants Instagram Account Tuylin20 were admitted into evidence as Exhibits 85a-e.
[3] Known Child Pornography consists of series of child pornography that have been previously identified by the National Center for Missing and Exploited Children (NCMEC").

omitted) (citing *Pugh*, 515 F.3d at 1195). Accordingly, the more serious the crime, the "greater the need for retribution and the longer the sentence should be." *Irey*, 612 F.3d at 1206.

In this regard, the Eleventh Circuit is of the view that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable." *United States v. Sarras*, 575 F.3d 1191,1220 (11th Cir. 2009); *see e.g., Johnson*, 451 F.3d at 1244 (upholding as reasonable a within guideline sentence of 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and §2252A(b)(1)); *see e.g., United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), *cert.denied*, 555 U.S. 1123 (2009). Notwithstanding the Defendant's age and lack of criminal history, certainly the facts and circumstances of this case meet, and in some cases exceed, the conduct of defendants who received similar or higher sentences than the sentence the United States now requests. The gravity of Defendant's criminal conduct is also reflected in the harm he has inflicted on the victims he sexually abused. The Eleventh Circuit acknowledged the significant harm that child pornography offenses inflict on a victim: "[T]he material produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *See Pugh*, 515 F.3d at 1195, n.11. Evident from the testimony of the victims at trial, is that the victims in this case have suffered, and will continue to suffer knowing the pornography the Defendant produced will forever exist on the internet.

The United States recognizes that it seeks the upper end of the guideline sentence, which is tantamount to life. In this case there is a significant societal interest in deterring those who use the internet to sexually abuse children. A substantial sentence strongly signals to prospective

5

offenders that the justice system offers no leniency to those who choose to abuse children, regardless of whether or not that abuse occurs through the veil of the internet. Prospective offenders who are considering such offenses must be strongly deterred and made aware of the severe consequences that will follow regardless of where they choose to sexually abuse children. This factor therefore also weighs in favor of a sentence at the upper end of the guideline range.

Under Section 3553(a)(6) the Court should also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In the Middle District of Florida, in an strikingly similar case, the Court imposed a sentence of 105 years on a 31 year old defendant who pled guilty to sextorting 300+ victims approximately the same age rage as the victims in this case. (*United States v. Lucas M. Chansler* MDFL). Courts have also upheld as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters *See, e.g.,Betcher*, 534 F.3d at 827-28. The Eleventh Circuit has also found a sentence of 50 years reasonable for a 19 year old defendant who lured young boys over the internet into producing sexually explicit images of themselves and then distributed them to other like-minded pedophiles. (*United States v. Patrick Killen*, 773 Fed Appx. 567). A high end guideline sentence falls within the heartland of this type of crime. While the Defendant succeeded in producing child pornography with several victims that testified at trial, the evidence showed that he clearly terrorized hundreds more.

The trial evidence in this case revealed how the Defendant delighted in persecuting his victims. He used fear, coercion, and humiliation to keep them in his thrall. The Defendant did not simply ask these children for sexually-explicit images and videos, he manipulated and tricked them—using threats of publicity and disclosure to bend these victims to his will. The psychological torment of each child was key to the Defendant's offenses. The Defendant's words and deeds are

6

the best argument for a sentence focused on protecting the public. He needs a long prison sentence because of the pleasure he takes in hunting, harassing, exploiting, and sexually abusing children—some to the point of wanting to commit suicide. The Defendant engaged in a concentrated, deliberate campaign to find and exploit children. The Defendant's actions will haunt the victims and their families forever because he engaged in a particularly malevolent form of sexual abuse. Children rarely fully recover from the trauma of sexual abuse. A. Perry and D. DiLillo, *Child Sexual Abuse*, 147, in N.A. Jackson, Encyclopedia of Domestic Violence, (2007). While short term effects of sexual abuse include fear, anxiety, anger, depression, and sexually inappropriate behavior, long-term effects include self-destructive behavior, tendency toward revictimization, substance abuse, and sexual maladjustment. Victims of child pornography production crimes describe how the crime limits their lives, because they fear exposure or publicity. A. Gertwitz-Meydan, W. Walsh, J. Wolak, and D. Finkelhor, The complex experience of child pornography survivors, 244, *Child Abuse and Neglect*, 80 (2018). A sentence at the high end of the guideline range will provide comfort to all the victims. Although they may never fully heal, they will know that the Defendant cannot contact them or afflict them for many years.

**The Proposed Sentence will Provide Justice to Victims**

One of the most important considerations is the rights and perspectives of the victims. The Crime Victims' Rights Act, 18 U.S.C. § 3771, establishes a set of rights for victims of federal crimes, including the right to be protected from the accused, the right to confer with the prosecutor, and the right to be treated with fairness and respect for their privacy and dignity. *See* 18 U.S.C. § 3771(a)(1), (5), (8). Protecting victims' dignity and privacy is especially important in a case like this. The Defendant is an extortionist. He used his victims' private images—their most sensitive digital property—as a tool to get what he wanted. By proceeding to trial, many of these children were forced to relive their nightmares and have their sadistic pornographic images displayed. They

came to court where they had to relive the trauma of the Defendant's crimes with the additional worry that the legal proceedings would identify them and cause additional harm to their reputations.

## CONCLUSION

For the foregoing reasons, the government respectfully states that the Court impose a sentence at the high end of the advisory guidelines range which will protect the public, provide justice to victims, and adequately punish the Defendant's crimes.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: /s/ Jodi L. Anton
JODI L. ANTON
Assistant U.S. Attorney
Florida Bar No. 0184098
500 East Broward Blvd, Suite 700
Ft. Lauderdale, FL 33394
Tel: (954) 660-5692
Jodi.anton@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Jodi L. Anton
Assistant U.S. Attorney