```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                          MIAMI DIVISION
                    CASE NO.  18-60256-CR-JEM


    UNITED STATES OF AMERICA,

                   Plaintiff,

         vs.
                                             Miami, Florida
                                             September 12, 2019
    JOSEPH ISAIAH WOODSON, JR.,              Pages 1-18

                   Defendant.
    _____

                  TRANSCRIPT OF CALENDAR CALL HEARING
                BEFORE THE HONORABLE JOSE E. MARTINEZ
                    UNITED STATES DISTRICT JUDGE


    APPEARANCES:

    FOR THE PLAINTIFF:
                           United States Attorney's Office
                           BY:  JODI ANTON,  A.U.S.A.
                           BY:  FRANCIS VIAMONTES, A.U.S.A.
                           500 East Broward Boulevard
                           Suite 700
                           Fort Lauderdale, Florida 33394

    FOR THE DEFENDANT:
                           Federal Public Defender's Office
                           BY:  ANTHONY J. NATALE, A.F.P.D.
                           BY:  CLEA D.T. WEISS, A.F.P.D.
                           BY:  KATHLEEN E. MOLLISON, A.F.P.D.
                           150 West Flagler Street
                           Suite 1700
                           Miami, Florida 33130

    REPORTED BY:           DAWN M. SAVINO, RPR
                           Official Court Stenographer
                           400 N. Miami Avenue, 10S03
                           Miami, Florida  33128
                           Telephone:  305-523-5598
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
13:27:06   1                    P-R-O-C-E-E-D-I-N-G-S
13:31:37   2           THE COURT:  Be seated, please.
13:31:40   3           COURTROOM DEPUTY:  Case number
13:31:44   4   18-60256-criminal-Martinez, United States of America versus
13:31:47   5   Joseph Isaiah Woodson.
13:31:47   6           Counsel, please state your appearance.
13:31:50   7           MS. ANTON:  Good afternoon, Your Honor.  Jodi Anton and
13:31:56   8   Francis Viamontes on behalf of the United States.
13:31:56   9           THE COURT:  Good afternoon, ladies.
13:31:58  10           MR. NATALE:  Good afternoon, Your Honor.  Anthony
13:32:00  11   Natale from the Federal Public Defender's Office, along with?
13:32:00  12           MS. WEISS:  Clea Weiss.
13:32:04  13           MS. MOLLISON:  Kate Mollison.
13:32:06  14           MR. NATALE:  Who will be trying the case along with me.
13:32:07  15           THE COURT:  All right.  Have a seat.
13:32:10  16           How long do you think this case will take?  A week?
13:32:14  17           MS. ANTON:  Yes, Judge.  I'm fairly confident we can
13:32:15  18   get it done in a week.
13:32:18  19           THE COURT:  Five trial days?
13:32:18  20           MS. ANTON:  Yes.
13:32:22  21           THE COURT:  Well, I'm still in a trial and I probably
13:32:27  22   will be for a couple of days of next week.  So perhaps what we
13:32:31  23   ought to do is shoot for picking a jury late next week and
13:32:35  24   actually starting the trial itself on the 23rd because that's
13:32:38  25   the second week of the trial week.  Is that all right?
```

```
13:32:41   1              MR. NATALE:  Your Honor, that's fine with us.  I also
13:32:45   2    think that the Government -- we've been meeting and we have
13:32:52   3    stipulated to probably around 90% of the evidence.
13:32:53   4              MS. ANTON:  I'd agree.
13:32:57   5              MR. NATALE:  So there's going to be stipulations to 90%
13:33:00   6    of the evidence that's going to come in, so that will, I think,
13:33:01   7    streamline it.
13:33:08   8              There is one motion in limine which is pending, but --
13:33:11   9              THE COURT:  I've got three matters that we need to talk
13:33:14  10    about.  The Defendant's motion in limine to preclude evidence of
13:33:19  11    psychological, social and academic harm to the victims.  What's
13:33:22  12    the status of that?  What is your position on that?
13:33:23  13              MS. ANTON:  Yes, Judge.  I filed a response indicating
13:33:27  14    that the Government would concede the motion, and that we didn't
13:33:30  15    intend on eliciting that testimony.
13:33:32  16              THE COURT:  So that's acceptable?  That's fine?
13:33:33  17              MR. NATALE:  Yes.
13:33:34  18              THE COURT:  All right.  And then the Defendant's motion
13:33:40  19    in limine to exclude 404(b) evidence.  What's the nature of the
13:33:43  20    404(b) evidence?  Remind me.
13:33:45  21              MS. ANTON:  Judge the nature of the 404(b) evidence --
13:33:46  22              THE COURT:  The brother.
13:33:46  23              MS. ANTON:  Yes.
13:33:47  24              THE COURT:  Okay.
13:33:49  25              MS. ANTON:  It was another minor victim.
```

```
13:33:51   1           THE COURT:  And you're saying that that should not come
13:33:54   2   in because it's more prejudicial than probative?
13:33:56   3           MR. NATALE:  That's correct.
13:33:58   4           THE COURT:  All right.  Prejudicial, I would expect it
13:34:01   5   to be.  If it's not prejudicial, it's probably not relevant.
13:34:07   6   But unfairly prejudicial, I don't think.  I think under the
13:34:08   7   nature of the case, I think it's acceptable, and I will deny
13:34:10   8   your motion in limine to exclude that.  I believe that it is
13:34:13   9   404(b) and appropriate.
13:34:17  10           MR. NATALE:  Very well, Your Honor.  When it's going to
13:34:21  11   be coming in, we will probably raise an objection and if the
13:34:23  12   Court -- you know, we could recognize that we're not waiving
13:34:24  13   that.
13:34:26  14           THE COURT:  No, I understand and you certainly can
13:34:28  15   raise it.  All right.
13:34:32  16           Now, let's talk about the logistics.  I have somebody
13:34:37  17   here from our IT because I need them to get with your IT to make
13:34:41  18   sure that we can properly do this.  Where do you propose that
13:34:44  19   this testimony is going to coming from?
13:34:47  20           MS. ANTON:  Judge, I would propose if there's another
13:34:51  21   room somewhere fairly close in the courthouse, that we can have
13:34:55  22   those children testify from that room.
13:34:59  23           THE COURT:  We can use my conference room.  We can use
13:35:04  24   Judge Bloom's jury room, she's not in trial next week.  I don't
13:35:12  25   care.  But it seems like, are either of those places capable of
```

```
13:35:16   1    transmitting something so that it can be picked up on the
13:35:18   2    computers and televisions in here?
13:35:22   3              COMPUTER TECHNICIAN:  Yes, sir.
13:35:24   4              THE COURT:  All right.  Without any big deal?
13:35:25   5              COMPUTER TECHNICIAN:  Without any big deal.
13:35:28   6              MR. NATALE:  Your Honor, the concern that we have is
13:35:31   7    that it would probably be best if it's on another floor, so this
13:35:33   8    way the jurors won't have contact with people coming and going
13:35:40   9    and they're going to have a therapy dog, I think it's Rocket?
13:35:43  10    And so what we have discussed --
13:35:46  11              THE COURT:  The therapy dog goes in my office.  I'm the
13:35:51  12    one that needs the therapy.  I don't have any problem with the
13:35:55  13    therapy dog going wherever the heck he wants to or she wants to.
13:35:59  14              MR. NATALE:  We just think that there's just -- there's
13:36:04  15    a possible of jurors seeing people with the dog, and -- if they
13:36:05  16    were on the same floor.
13:36:08  17              THE COURT:  Well, I don't propose to let them see, you
13:36:11  18    know, the -- a lot of that stuff.  I would just -- you know,
13:36:15  19    they can actually come in Judge Bloom's side and go into the
13:36:21  20    conference room which is right there.  So the jurors never get
13:36:25  21    past that door that's about even with us right here.
13:36:28  22              MR. NATALE:  Right.  They wouldn't be assembling out in
13:36:29  23    front though.
13:36:32  24              THE COURT:  Well, I mean, I don't care.  Can we do it
13:36:34  25    from another floor just as easily?
```

```
13:36:35   1              COMPUTER TECHNICIAN:  Yes.
13:36:37   2              THE COURT:  The question is what other floor is
13:36:42   3    available?  Trying to think.  I mean, we could actually do it
13:36:51   4    from this floor on the other side of the atrium which does not
13:36:55   5    have a courtroom, but it does have a conference room and we
13:36:58   6    could use that conference room which would make it easy because
13:37:00   7    they could hang out in chambers over there when they weren't
13:37:05   8    here.  We'd have to assign a court security officer to be with
13:37:08   9    them, but that's no big deal.  I'm sure we could get an extra
13:37:12  10    court security officer.  You guys decide where you want it and
13:37:17  11    then let's start doing the logistics of setting it up early next
13:37:20  12    week so that it's ready whenever we actually go to trial.  The
13:37:23  13    problem with every other floor is that every other floor is full
13:37:28  14    of judges and they got things to do.  Places to go.  So I don't
13:37:29  15    want to mess them up.
13:37:31  16              MS. ANTON:  Judge, I would propose if we could keep it
13:37:34  17    on this floor, I think it would be easier for the ebb and flow
13:37:37  18    of getting the witnesses on and off the stand.  And we would
13:37:40  19    agree to keep the therapy dog and the witnesses in their room
13:37:44  20    when the jurors are coming in and out of the courtroom.
13:37:46  21              THE COURT:  We can pretty much control when the jurors
13:37:50  22    come in and out, as long as they understand -- how many people
13:37:55  23    are going to be testifying by pictures?  By television?
13:37:58  24              MS. ANTON:  And we have seven listed victim children.
13:38:02  25    Some of those children are strong enough to actually come into
```

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

```
13:38:07   1    the courtroom, and I anticipate will be able to come into the
13:38:11   2    courtroom.  And so a handful will not be able to come in and
13:38:13   3    we'll use the CCTV.
13:38:14   4             MR. NATALE:  Your Honor, we've talked to the Government
13:38:19   5    about this.  What we were thinking of, the attorney who will be
13:38:24   6    doing the cross-examination will need to have contact with not
13:38:27   7    only the attorneys here in the courtroom, but with the client.
13:38:34   8    And what we were thinking of is having -- communicating via our
13:38:36   9    cellphones, so this way if something comes up, we can
13:38:39  10    communicate to them just like we would if we were sitting next
13:38:41  11    to each other.
13:38:42  12             THE COURT:  Yeah.  Well, that makes sense except that
13:38:46  13    the cellphone -- well, it's going to be obvious that you're
13:38:49  14    talking on it.  The jury is going to be here, and they're going
13:38:51  15    to be watching the television but at the same time, they're
13:38:54  16    going to be seeing the Defendant and the lawyers that remain in
13:39:01  17    the courtroom.  Only some of the lawyers will be here, correct?
13:39:02  18             MR. NATALE:  That's correct, because some of the
13:39:04  19    lawyers are going to be in the actual room doing the
13:39:05  20    cross-examination.
13:39:08  21             THE COURT:  I'd rather have it on this floor if we can
13:39:10  22    do that.  I don't really care if it's over there or over here,
13:39:16  23    but over here makes it easier.  It's right there.  It's in the
13:39:19  24    back here.  And they don't have to come in until the jury is
13:39:23  25    either in the jury room or in the box, and then they can come in
```

```
13:39:27   1    through my chambers and it makes it the easiest way.
13:39:33   2             MR. NATALE:  I guess our concern is that we do it in
13:39:35   3    such a way, because we don't want to have that problem.  That's
13:39:36   4    my concern.
13:39:37   5             THE COURT:  What problem?
13:39:40   6             MR. NATALE:  Well, the problem of if they are in close
13:39:44   7    proximity, that they may come in contact with the dog and with
13:39:47   8    the people with the dog.  But if they're not going to, they're
13:39:48   9    not going to.
13:39:50  10             THE COURT:  The dog can -- I mean, I guess the dog has
13:39:54  11    to go out some time, but at some point they can very clearly do
13:39:57  12    that only when the jury is in the jury room or in the courtroom.
13:40:02  13    The others can hang out in there all they want.  There's even a
13:40:04  14    television in there if they want.
13:40:08  15             I think we'll use my conference room, I think that
13:40:12  16    might be the best thing.  So Diane, please reserve the
13:40:16  17    conference room for the 23rd, that entire week, okay?  All
13:40:21  18    right.  And get some kibble for the dog.  Okay.
13:40:23  19             What else do you want?  What else do we need to talk
13:40:24  20    about today?
13:40:26  21             MS. ANTON:  Judge, while we're talking about the dog, I
13:40:30  22    just have one more logistical question.  Am I going to need an
13:40:32  23    order from Your Honor to bring him into the courthouse?
13:40:35  24             THE COURT:  Did you file a motion to let him in.
13:40:37  25             MS. ANTON:  No, but I can file a motion.
```

```
13:40:38   1              THE COURT:  Yeah.  I don't think they can stop you,
13:40:45   2    it's a service dog.  I mean, GSA says no dogs here, but I
13:40:48   3    haven't brought my dog in since they told me not to, but I am
13:40:53   4    kind of annoyed about it.  I need my dog so that I don't go into
13:41:06   5    a rage at GSA.  I don't think you will need it, but I'll give it
13:41:06   6    to you.  It doesn't make any difference to me.  File something
13:41:08   7    and I'll take care of it immediately.
13:41:10   8              All right.  Do you need a dog too?
13:41:13   9              MR. NATALE:  My dog is in West Palm, wouldn't want to
13:41:13  10    come down.
13:41:16  11              THE COURT:  I know.  Those West Palm dogs are very
13:41:17  12    snooty.
13:41:19  13              MR. NATALE:  Well, let me tell you, this is a pure
13:41:23  14    American mutt, so it's like -- she's got a good life.
13:41:26  15              THE COURT:  I got my dog at the pound, but it turns out
13:41:28  16    he's a pure bred and I didn't know it.  I thought he was a
13:41:32  17    Spaniel mix, turns out he's a Field Spaniel, which there aren't
13:41:34  18    very many of them around here.  But if you see the Middletons
13:41:40  19    which is the princess, they have -- her parents raise them and
13:41:45  20    her brother is -- they got pictures of a dog that could be my
13:41:48  21    dog.  I mean, exactly the same.
13:41:51  22              Anyway, that's neither here nor there.
13:41:53  23              MR. NATALE:  Regarding jury selection, Judge.
13:41:57  24              THE COURT:  Yes.  We're going to have to do that.
13:41:58  25              MR. NATALE:  I'm sorry?
```

```
13:41:59   1              THE COURT:  We're going to have to do that.
13:42:01   2              MR. NATALE:  Well, I know we are.  And obviously this
13:42:08   3    is the sort of case where what I am going to be suggesting is
13:42:15   4    that there's certain questions that maybe we could have a
13:42:19   5    one-page or no more than two-page questionnaire to have them
13:42:26   6    fill out regarding the issues of child pornography and things
13:42:31   7    like that, as well as do they have any personal experience,
13:42:33   8    direct or indirect --
13:42:38   9              THE COURT:  I'm not opposed to the concept of a
13:42:40  10    questionnaire.  I, of course, would need to approve the contents
13:42:40  11    of it.
13:42:41  12              MR. NATALE:  Absolutely.
13:42:44  13              THE COURT:  So if you want to submit it, I will be
13:42:51  14    happy to look at it.  Submit it Monday, and I will look at it
13:42:55  15    and we'll try to pick a jury Thursday, if that makes sense.
13:43:00  16    We'll try to rule I think that gives us enough time.  And we'll
13:43:05  17    try to have -- can we get that, Wanda?  How many people do you
13:43:09  18    think we'll need?  We usually get the pool of about 40, but I
13:43:12  19    think under the circumstances, we should have definitely have
13:43:14  20    more.
13:43:14  21              MR. NATALE:  Yeah.
13:43:15  22              THE COURT:  And this way we'll have the opportunity to
13:43:19  23    carry it over until Friday if we have to.  Ordinarily, we pick a
13:43:23  24    jury by noon.  I would suggest that we try to set the entire day
13:43:32  25    aside.  I think Wednesday is enough.  Wanda, you got any problem
```

```
13:43:33   1    getting them?
13:43:35   2              COURTROOM DEPUTY:  How many do you want, Judge?
13:43:37   3              THE COURT:  I don't know.  How many do you think we
13:43:38   4    should get?  Maybe 60.
13:43:41   5              MS. ANTON:  I would say 55 or 60.
13:43:43   6              THE COURT:  60, and then tell her to stand by with any
13:43:47   7    more that we might need.  There are going to be some people that
13:43:50   8    are going to use the content or the subject as an excuse to get
13:43:52   9    out of jury duty.
13:43:54  10              MS. ANTON:  Yes.  Many.
13:43:56  11              THE COURT:  Do you think that might be enough?
13:43:59  12              MS. ANTON:  I think that might be enough.
13:44:00  13              MR. NATALE:  Well, let's hope that it will be enough,
13:44:01  14    yeah.
13:44:03  15              THE COURT:  Yeah, but do you think it will be?
13:44:05  16              MR. NATALE:  I think it would be.  I mean, we don't
13:44:07  17    have any holidays that are coming.  In other words, if we had
13:44:10  18    holidays that were coming up or things like that, then I would
13:44:12  19    be much more concerned.
13:44:14  20              THE COURT:  Problem you of have is that it's the second
13:44:18  21    week, which means that they think they're going to be going home
13:44:24  22    that Friday.  And we're going to keep them for an extra week.
13:44:26  23              MR. NATALE:  A lot of them probably have been struck
13:44:29  24    for cause or other things in other cases.
13:44:33  25              THE COURT:  Yeah, it's at the end of the second week.
```

```
13:44:34   1                MS. ANTON:  Maybe we should pick on Monday.
13:44:37   2                MR. NATALE:  Yeah, what I'm thinking of is that we --
13:44:39   3                THE COURT:  80.
13:44:40   4                COURTROOM DEPUTY:  You want 80 people?
13:44:43   5                THE COURT:  Can we fit 80 people in the courtroom?  Is
13:44:46   6   there going to be any --
13:44:48   7                COURTROOM DEPUTY:  This side and that side.  Both
13:44:48   8   sides.
13:44:50   9                THE COURT:  Is there going to be any spectators from
13:44:55  10   the defense side?  Because the problem is --
13:44:57  11                MR. NATALE:  No, I don't think we're going to have any
13:44:59  12   spectators from the defense side.
13:45:01  13                THE COURT:  That would be the only thing is we have to
13:45:06  14   fill both sides with it.  And it is a public trial.  And if the
13:45:10  15   family or friends of the defense want to be here, they have a
13:45:13  16   right to be here.  But I don't know where I'm going to put them.
13:45:15  17   You understand what I'm saying?
13:45:17  18                MR. NATALE:  Right.  I don't think that's going to be a
13:45:20  19   problem, Judge.  The concern that I think that if people have
13:45:22  20   been previously struck --
13:45:24  21                THE COURT:  No, I understand.  That's why I want to get
13:45:28  22   more.  That's why I think maybe 80 might be the appropriate
13:45:31  23   number.  Let's go for 80.
13:45:34  24                COURTROOM DEPUTY:  I'm sorry, Judge.  What date did you
13:45:37  25   say we want to start?
```

```
13:45:37   1              THE COURT:  Thursday.
13:45:40   2              COURTROOM DEPUTY:  Thursday?  What date, the 26th?
13:45:43   3              THE COURT:  I don't know.  What's today?
13:45:45   4              COURTROOM DEPUTY:  The 19th?
13:45:48   5              THE COURT:  Yeah.  And start the trial the 23rd.
13:45:54   6              COURTROOM DEPUTY:  Okay.  So we have jury selection the
13:45:57   7    19th and start trial the 23rd.
13:46:00   8              THE COURT:  Rosh Hashanah is the first of October.  We
13:46:02   9    should be done by then.  Do you all agree?
13:46:03  10              MS. ANTON:  Yes.
13:46:03  11              MR. NATALE:  Yes.
13:46:09  12              THE COURT:  Yeah.  If you give me the questionnaire
13:46:12  13    Monday maybe we can -- no, if you give me the questionnaire this
13:46:15  14    week, maybe we can get it out on Monday.
13:46:16  15              MR. NATALE:  I'll get it as soon as I can, Your Honor,
13:46:19  16    and I'm going to give to it the Government and see what they
13:46:25  17    would like to include.  I'm just thinking of what would be the
13:46:29  18    questions that are more of the problematic ones.  Not like, you
13:46:31  19    know, where do you live, do you have cousins and things like
13:46:35  20    that.  Just those issues that normally --
13:46:36  21              THE COURT:  I'll probably know to ask those questions.
13:46:42  22    I'll probably remember to ask those.
13:46:45  23              MR. NATALE:  How much time do you normally give us for
13:46:46  24    attorney-conducted --
13:46:48  25              THE COURT:  Questions?
```

```
13:46:48   1              MR. NATALE:  Yeah.
13:46:51   2              THE COURT:  Boy, that's an easy one.
13:46:52   3              MR. NATALE:  Really?
13:46:54   4              THE COURT:  I have not had attorneys ask questions in
13:46:59   5   more than one case since I've been here.  18 years.  And you
13:47:02   6   know what, I haven't been reversed yet.
13:47:04   7              MR. NATALE:  Well, of course you're not going to be
13:47:09   8   reversed on it.  I mean, you know, come on.  But --
13:47:11   9              THE COURT:  No, it's been my experience that attorney
13:47:16  10   questioning is almost invariably schmoozing with the jurors and
13:47:19  11   there's no place for that.
13:47:22  12              MR. NATALE:  If I promise not to schmooze?
13:47:25  13              THE COURT:  No.  They all promise not to schmooze,
13:47:29  14   Mr. Natale.  All of them promise not to schmooze and they slip.
13:47:33  15   They slip into schmoozing quickly.  So I don't permit it.  If
13:47:36  16   you have questions that you want to ask, tell me and I'll ask
13:47:37  17   them.
13:47:38  18              MR. NATALE:  We'll submit them.
13:47:40  19              THE COURT:  Submit them and I will consider asking
13:47:44  20   them, I should say.  If I believe it's covered by the remainder
13:47:46  21   of the questioning, I won't.  But if it's something that needs
13:47:49  22   to be asked, I would be happy for you to bring it to my
13:47:50  23   attention.
13:47:51  24              MR. NATALE:  Very well.
13:47:55  25              THE COURT:  Any other matters?
```

```
13:47:57   1              THE COURT:  How long do you want for opening
13:48:02   2   statements?  An hour?  An hour is too long?
13:48:02   3              MS. ANTON:  Half an hour.
13:48:06   4              THE COURT:  Half an hour.  Yeah, half an hour is fair.
13:48:09   5              MR. NATALE:  Judge, probably 30 minutes would be fine
13:48:15   6   for us too, but there may be our experts, one or two of them
13:48:21   7   might not be available until the 30th?  Until the 30th.
13:48:24   8              THE COURT:  That's too late.  The case might be over by
13:48:25   9   then.
13:48:26  10              MR. NATALE:  Well Your Honor, the problem is that we
13:48:30  11   thought that it was going to be going longer than that.  We can
13:48:33  12   see if we can try to call them out of order, because we
13:48:35  13   originally thought we were going to be starting on the 23rd, and
13:48:38  14   originally we thought the trial was going to probably take --
13:48:41  15   was going to be ten trial days.
13:48:43  16              THE COURT:  No, it's not happening.  I can't conceive
13:48:48  17   of how this could take more than maybe six, maybe.  And that's
13:48:52  18   why I want to pick a jury this next week, so that we can start
13:48:55  19   Monday first thing in the morning and go.
13:48:58  20              MR. NATALE:  Judge, we're going to have to see then if
13:49:02  21   -- maybe we have to, if we have to call any of them out of
13:49:06  22   order, then we may have to call them out of order, Judge.
13:49:07  23              THE COURT:  Well, talk to the prosecutor about their
13:49:12  24   agreement to that, but the trial is going to start probably the
13:49:18  25   23rd and we'll go as long as we go, and then we'll go to you and
```

```
13:49:25   1   say it's your turn.  If they pass the directed verdict stage.
13:49:26   2   Okay?
13:49:28   3             MR. NATALE:  Well, okay.  And then if in the event that
13:49:32   4   we don't have agreement about calling them out of order, then at
13:49:36   5   least we're going to request the record in order to proffer what
13:49:37   6   their testimony would have been.
13:49:42   7             THE COURT:  Sure.  That's not a problem.  You can do it
13:49:47   8   in the time when they would have testified.  You'll have plenty
13:49:48   9   of time.
13:49:48  10             What else you got?
13:49:49  11             MR. NATALE:  That's it.
13:49:51  12             THE COURT:  Okay.  I would endeavor to try to get them
13:49:53  13   here toward the end of that first week, because that's --
13:49:55  14             MR. NATALE:  We will do everything we can, Judge.
13:49:56  15             THE COURT:  I think that's pretty much everything we're
13:49:59  16   going to get is that week.  Okay.
13:50:01  17             MS. ANTON:  In regards to the defense expert, they
13:50:04  18   filed a notice of expert and we've been in communication about
13:50:09  19   it.  However, we still don't have the expert doctor's report as
13:50:12  20   it pertains to the Defendant.
13:50:13  21             MR. NATALE:  Judge, there is no report.  What we have
13:50:15  22   told them is what the doctor would be saying, but the doctor has
13:50:20  23   not done any report.  We have provided them with all of the
13:50:25  24   documents that the doctor has had access to, and we have
13:50:31  25   explained that what the doctor would be testifying to is the
```

```
13:50:36   1    fact that the Defendant is autistic and the nature of that
13:50:40   2    autism, and how that affects his demeanor and how he comes
13:50:44   3    across and other, you know, things like that.  So we've already
13:50:48   4    told him what the report would be, but there is no report, per
13:50:48   5    se.
13:50:54   6              Now, if -- you know, what we've done is we've told them
13:50:56   7    what the person is going to testify.
13:50:57   8              THE COURT:  If that complies with the rule, that's
13:51:01   9    fine.  You know, I don't have the rule in front of me at the
13:51:03  10    moment, but if that complies with the rule, then you've done
13:51:06  11    what you're supposed to do.  Just comply with the rules,
13:51:09  12    whatever they are.  Okay?  All right.
13:51:11  13              We'll be in recess then until -- we'll let you know
13:51:16  14    Monday or Tuesday, whether it will be Thursday or Friday that
13:51:18  15    we'll be picking the jury.  Okay?
13:51:20  16              MS. ANTON:  Judge, I'm sorry.  One last question about
13:51:24  17    scheduling.  Do you anticipate that we'll go full days for that
13:51:25  18    week?
13:51:28  19              THE COURT:  I anticipate that we will go full days.  I
13:51:31  20    can tell you that I am supposed to go to physical therapy twice
13:51:35  21    a week.  I have been known to cancel, but I'm trying not to.
13:51:43  22    And so if I do, I go at 9:00 and I'm here by 10, 10:15.  We'll
13:51:47  23    start at, you know, a couple days that cross that.
13:51:51  24              As far as the end of the day, we'll go until about ten
13:51:54  25    minutes of 5, or if we have somebody on the stand that we want
```

```
13:51:58   1    to keep going and finish, we'll finish.  But for the most part,
13:52:02   2    we'll try to quit at a few minute before 5.  We'll break for an
13:52:06   3    hour at least for lunch, sometimes 90 minutes depending on if I
13:52:11   4    have other hearings, which I've had two this week.  So like
13:52:18   5    this.  Okay?  And even then, we'll just go later and break at a
13:52:23   6    later time so that we are missing the 1:30.  I get a shorter
13:52:25   7    lunch, you don't.
13:52:27   8            Anything else?
13:52:27   9            MS. ANTON:  No, Your Honor.
13:52:30  10            THE COURT:  Have a great day.
13:52:31  11            MS. ANTON:  Thank you.  You too.
13:52:43  12            THE COURT:  Looking forward to seeing you guys.  I need
13:52:45  13   you to get with Ruben.  I need you to get with him to make sure
13:52:49  14   we're all clear on how we're going to do this and what equipment
13:52:54  15   you need to bring or have or whatever.  Okay?
13:52:54  16            (PROCEEDINGS CONCLUDED)
```

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

3/16/2020            /s/ Dawn M. Savino
Date                 DAWN M. SAVINO, RPR

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER